IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHARON BARNETT : CIVIL ACTION
:
:
v. : NO. 08-652
:
CHICAGO TITLE INSURANCE :
CO., :

## MEMORANDUM AND ORDER

**Juan R. Sánchez, J.**                                                      **August 11, 2008**

      Chicago Title Insurance Company asks this Court to dismiss Sharon Barnett's Complaint, arguing the Real Estate Settlement Procedures Act (RESPA)[1] does not provide a remedy for those overcharged for title insurance where a portion of the overcharged fee was split or kicked back to a third party who provided services in exchange for its fee. Because I agree with Chicago Title there is no claim when both an insurer and its agents have provided a service in exchange for an overcharged fee, I will grant Chicago Title's Motion to Dismiss.

---

[1] 12 U.S.C. § 2601 *et seq*. Specifically, 12 U.S.C. §§ 8(a) and (b), which state in relevant part:
    (a) Business Referrals. No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person. (b) Splitting charges. No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

## FACTS[2]

Chicago Title is a title insurance company licensed to underwrite and issue title insurance policies for properties located in Pennsylvania. Chicago Title compensates local title companies and agents by splitting the premiums paid for the title insurance.

Chicago Title files its rates with, and is a member of, the Title Insurance Rating Bureau of Pennsylvania (TIRBOP). The title insurance rates are contained in the Title Insurance Rate Manual of the Commonwealth of Pennsylvania (TIRBOP Manual), filed with and approved by the Pennsylvania Insurance Department. Chicago Title is legally obligated to charge the rates listed in the TIRBOP Manual. According to sections 2.8 and 5.3 of the TIRBOP Manual, whenever an application for a new title insurance policy is made within 10 years of a previously issued title insurance policy on the same property, a title insurance company must charge a "reissue rate," a 10 percent discount for the premium. According to sections 2.8 and 5.6 of the Manual, if refinancing occurs within three years of a previously issued title insurance policy on the same property, the insured qualifies for the "refinance rate," a 20 percent discount from the reissue rate, or the equivalent of a 28 percent discount from the basic rate.

Barnett owns a home and purchased a title insurance policy on a refinancing transaction in June, 2006. On February 13, 2007, Barnett refinanced the mortgage on her home; closing and settlement services were provided by Service Link, an agent of Chicago Title. Chicago Title collected from Barnett a premium of $961.88. Barnett, however, was entitled to a refinance rate premium of $769.50. The difference of $192.38 was pocketed by Chicago Title and not credited to

---

[2] This court "accepts the allegations of the complaint as true and draw[s] all reasonable inferences in the light most favorable to the plaintiff[]." *Ranke v. Sanofi-Synthelabo, Inc.*, 436 F.3d 197, 200 (3d Cir. 2006).

2

Barnett's account. Barnett states Chicago Title had the means to determine she qualified for the discount and knowingly and willfully concealed her eligibility from her.

Barnett contends the overcharge of $192.38 constituted a referral fee or a kickback, in violation of RESPA, 12 U.S.C. § 2607(a) (also known as § 8(a) of RESPA) and also constituted acceptance of a charge made or received for services which were not actually performed in violation of RESPA, 12 U.S.C. § 2607(b) (also known as § 8(b) of RESPA).

**DISCUSSION**

Under Federal Rule of Civil Procedure 12(b)(6), "[d]ismissal is proper only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Ranke v. Sanofi-Synthelabo, Inc.*, 436 F.3d 197, 200 (3d Cir. 2006) (internal quotations and citations omitted). The complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). This requires "either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Id.* at 1969 (emphasis in original; internal quotations omitted).

Chicago Title argues Barnett fails to state a claim under § 8(a). Chicago Title relies on the statutory language § 8(c)(1)(B)[3] as creating an express exemption, applicable to title insurance companies and their agents, from the provisions of 8(a). Chicago Title also argues Barnett fails to state a claim under § 8(b) because this section authorizes splitting charges for services provided. Chicago Title relies on *Boulware v. Crossland Mortg. Co.*, 291 F.3d 261, 268 (4th Cir. 2002), which

---

[3] 12 U.S.C. § 8(c) states in relevant part:
    (c) Fees, salaries, compensation, or other payments. Nothing in this section shall be construed as prohibiting (1) the payment of a fee . . . (B) by a title company to its duly appointed agent for services actually performed in the issuance of a policy of title insurance . . . .

holds the section prohibits sharing fees with "parties who did nothing in return for the portions they received." Barnett's Complaint states Chicago Title and Service Link both performed actual services for her February 2007 refinancing.

Barnett addressed these points by urging this Court to adopt the Department of Housing and Urban Development's (HUD) interpretation of RESPA, holding referral fees are only permitted when they bear a reasonable relationship to the market value of the services provided.[4] Barnett uses this interpretation to argue, by charging more than the amount listed in the TIRBOP Manual, the overcharged portion could not be reasonable or for services actually performed because it was greater than the TIRBOP charge.

The Third Circuit has interpreted the difference between §§ 8(a) and (b): 8(a) "prohibits the acceptance of 'any fee, kickback or thing of value'"; and 8(b) "prohibits the acceptance of 'any portion, split or percentage of any charge.'" *Santiago v. GMAC Mortg. Group, Inc.*, 417 F.3d 384, 389 (3d Cir. 2005) (quoting statute). The Third Circuit held an allegation of overcharges alone was not actionable under RESPA.[5] The Court found it unnecessary to defer to HUD's interpretation because the plain language of the statute was unambiguous. *Santiago*, 417 F.3d at 386 (referring to *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. 837, 842-43 (1984) which stated, "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress"). The Court did

---

[4] In relevant part, 24 C.F.R. § 3500.14(g)(2) states, "[i]f the payment of a thing of value bears no reasonable relationship to the market value of the goods or services provided, then the excess is not for services or goods actually performed or provided."

[5] The plaintiff in *Santiago* argued RESPA provided a cause of action for overcharges and an overcharge occurs when one part of the fee is the reasonable value of the service provided while the other part of the fee is the amount additional to the reasonable value and for which no service was provided. That court rejected the argument. *See Santiago*, 417 F.3d at 387.

4

not address the issue of whether HUD's interpretation was worthy of deference and left open the question of whether the interpretation was correct. *Id.* at 388 (stating, "the United States [as Amicus Curiae] urges only the interpretation set forth by HUD that overcharging may be evidence of a RESPA violation. Whether that interpretation is correct is not at issue in this case, as Santiago is looking to establish that Section 8 incorporates an actual violation for overcharges"). *Santiago* explained RESPA is not a price control statute and is not concerned with whether services are properly valued. *Id.* at 388 n.3. The statute was not intended to be used to divide fees into "unreasonable" and "reasonable" amounts. *Id.* at 387. Accordingly, a cause of action for overcharges alone is not permitted. *Id.* at 388.

In addition to arguing she was overcharged, Barnett asserts referral fees must have a reasonable relationship to the market value of the services provided to be permissible. She argues, because no services were performed in addition to those which should have been provided at the legal rate, the charge is actionable. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint, pgs. 4-5 (referring to HUD's interpretation found at 24 C.F.R. § 3500.14(g)(2)). The *Santiago* court determined RESPA allowed a cause of action only for "*unearned* fees." *Id.* at 388-89 (emphasis added). It interpreted § 8(b) as stating, "no person can accept a fraction of a charge for services provided, unless they have actually provided services." *Id.* at 387. Therefore, rather than focusing on whether the charge was "reasonable" or "unreasonable," the Third Circuit looked to whether the party receiving the kickback or markup has provided a service in return for its fee to determine whether there is a cause of action under RESPA.[6]

---

[6] Several circuits agree with the Third Circuit. The Seventh, Eighth, and Fourth circuits agree it must be alleged a portion of the charge was kicked back to or split with a third party. The Seventh Circuit affirmed the dismissal of a claim because the plaintiff "failed to allege that [the defendant's] overcharge was in the nature of a 'portion, split, or percentage of any charge' given to a third party."

5

Therefore, RESPA does not provide a cause of action for mere overcharges. An overcharge is only actionable when a portion of the fee is kicked back or split with a third party who did not perform any services. Paying a third party for services it performed is not a violation of section 8(b). When the defendant keeps the overcharge for itself rather than transferring it to a third party, section

---

*Durr v. Intercounty Title Co. of Ill.*, 14 F.3d 1183, 1187 (7th Cir. 1994). Similarly, the Eighth Circuit has held § 8(b) prohibits overcharges when a portion of the charge is shared with a third party, not when the overcharge is retained by the overcharging party. *Haug v. Bank of America, N.A.*, 317 F.3d 832, 836 (8th Cir. 2002) (stating, "[w]e therefore hold that Section 8(b) prohibits only transactions in which the defendant shares a 'portion, split, or percentage of any charge' with a third party"). The Fourth Circuit, in *Boulware*, also distinguished between when there can and cannot be a cause of action for overcharges. In explaining the distinction, the court stated, "[section] 8(b) only prohibits overcharges when a 'portion' or 'percentage' of the overcharge is kicked back to or 'split' with a third party. Compensating a third party for services actually performed, without giving the third party a 'portion, split, or percentage' of the overcharge does not violate § 8(b)." *Boulware*, 291 F.3d at 265. In that case, the defendant kept the overcharge for itself rather than transferring any of it to a third party, and therefore, § 8(b) was held to be inapplicable.

The 11th Circuit also has held fees are not to be split into reasonable or unreasonable amounts to determine whether services were actually rendered for the "overcharged" portion. The fees are to be taken as a whole and it must be alleged the third party did not perform any services for the fees it received. The Eleventh Circuit (in per curiam opinions) recently upheld three decisions denying RESPA claims and stated § 8(b) "does not govern excessive fees because it is not a price control provision. . . . [C]ourts should not break single fees into various 'components' . . . ." *Morrisette v. NovaStar Home Mortg., Inc.*, No. 08-10036, 2008 WL 2610550, at *1 (11th Cir. Jul 3, 2008) (Plaintiffs conceded agent performed service on insurer's behalf); *Moody v. Commonwealth Land Title Ins. Co.*, No. 07-14999, 2008 WL 2610765, at *1 (11th Cir. Jul. 3, 2008) (Plaintiff did not allege the insurer nor the agent did not perform services in return for the fee); *Williams v. Countrywide Home Loans, Inc.*, No. 08-10303, 2008 WL 2609339, at *1 (11th Cir. Jul. 3, 2008) (Plaintiffs allege insurance company split fee with lender and concede agent performed service by acting on insurance company's behalf). The Court was quoting from its holding in *Friedman v. Mkt. St. Mortg. Corp.* which stated § 8(b) "requires a plaintiff to allege that no services were rendered in exchange for a settlement fee." 520 F.3d 1289, 1298 (11th Cir. 2008). One of the opinions which was upheld, *Morrisette v. NovaStar Home Mortg., Inc.*, specifically stated, "[t]here is further difficulty with the plaintiffs' attempt to cast as a markup an excessive charge by a provider of services. . . . [A] markup occurs only when someone who has performed no services tacks on a surcharge to the charge of someone who did provide services." *Morrisette v. NovaStar Home Mortg., Inc.*, 484 F. Supp. 2d 1227, 1231 (S.D. Ala. 2007), *aff'd*, No. 08-10036, 2008 WL 2610550 (11th Cir. Jul. 3, 2008). Another Eleventh Circuit opinion, *Busby v. JRHBW Realty, Inc.*, also focused on the issue of whether any services were provided. 513 F.3d 1314, 1327 (11th Cir. 2008).

8(b) is inapplicable. Barnett's Complaint alleges both Service Link and Chicago Title provided services. Paragraph 30 states, "closing and settlement services were provided by Service Link, a Pennsylvania company that is an agent of Defendant Chicago Title"; paragraph 32 states Service Link "issued a lender's title insurance policy . . . ."; paragraph 51 states, "Defendant provided 'settlement services'"; and paragraph 35 states, "[i]n charging and collecting from Ms. Barnett an excessive and illegal premium for the lender's title insurance policy, Chicago Title pocketed the difference of $192.38, and refused to credit any portion of it to Ms. Barnett's account." Pl.'s Comp. An unearned markup has not been alleged. There is no allegation stating Chicago Title added a surcharge without doing anything, and there is no allegation Service Link or the lender took Chicago Title's price and added a surcharge without doing anything. Therefore, the claim must fail.

    An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARON V. BARNETT | : | CIVIL ACTION |
| v. | : | No.   08-652 |
| CHICAGO TITLE INSURANCE CO. | : | |

### ORDER

AND NOW, this 11th day of August, 2008, Defendant's Motion to Dismiss (Document 10) is GRANTED. Judgment is entered in favor of Defendant Chicago Title Insurance Co. and against Plaintiff Sharon V. Barnett. The Clerk is directed to mark the above-captioned case CLOSED.

BY THE COURT:

Juan R. Sánchez, J.